UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT BROAD, | |
| Plaintiff, | Civil Action No. 14-771 (SRC) |
| v. | OPINION |
| THE HOME DEPOT U.S.A., INC., et al., | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendants Home Depot U.S.A., Inc. ("Home Depot"), Brock Darby and Scott Matthews (collectively, "Defendants") to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Robert M. Broad ("Plaintiff" or "Broad") has opposed the motion. The Court has considered the papers filed by the parties. For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

I. BACKGROUND

This is an action for wrongful termination and age discrimination. According to the Complaint, Broad, who is 51 years old, had been employed by Defendant Home Depot for over 22 years, over the span of which he consistently received favorable performance reviews, promotions and bonuses. In or about February 2013, Plaintiff alleges, he agreed to take on a newly created position that would concentrate on increasing marketing and sales to governmental

1

agencies throughout the United States.  Plaintiff further alleges that, when asked to assume this job, he was assured that his compensation structure would not be negatively impacted. The Complaint avers that Broad successfully performed his new employment responsibilities.

In or around late August 2013, however, Defendant Brock Darby, who had recently become Broad's new supervisor, advised Broad that he was being demoted.  Shortly before this announcement, Broad's immediate superior, Defendant Scott Matthews, had allegedly informed Broad that he was "making too much money," and shortly after Darby's demotion news, Matthews gave Broad a mid-year review that, according to Plaintiff, falsely indicated numerous deficiencies in Broad's job performance.  Then, in late September 2013, despite continuing to perform his duties in "exemplary fashion," the Complaint alleges, Broad was issued a disciplinary write-up by Matthews reprimanding him for violating Home Depot's standards of professionalism and citing a verbal complaint from Home Depot's marketing team about Plaintiff's demeanor.  After this reprimand, known internally at Home Depot as a "counseling," Broad contacted Home Depot's Human Resources Department to express his concern that Matthews and Darby were concocting negative reviews in retaliation for Broad's maintaining a high level of compensation and in an effort to force Broad to resign.  According to Plaintiff, Matthews confronted Plaintiff, asking him why he had contacted Home Depot's Human Resources Department, but Plaintiff did not discuss the matter with him.

On or about November 5, 2013, Darby advised Broad that his employment with Home Depot was terminated.  Home Depot did not provide Broad with a basis for the termination in writing, according to the Complaint.  He alleges that the negative performance review and complaints about Broad's conduct were not substantiated and that his grievances about Matthews

and Darby were not sufficiently investigated and/or addressed by Home Depot.  Broad maintains that he was demoted "not as a result of [his] job performance, but to make room for younger and lesser paid Home Depot employees to assume Broad's role and/or fill Broad's position." (Compl. ¶ 5.)  He further contends that he was unjustly terminated in retaliation for his complaints to Human Resources and based on age discrimination.

Broad filed this lawsuit in New Jersey state court on December 27, 2013. The Complaint asserts claims for breach of contract (Count One), breach of the covenant of good faith and fair dealing (Count Two), termination based on age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count Three), retaliatory termination in violation of the NJLAD (Count Four), retaliatory termination in violation of the Conscientious Employee Protection Act ("CEPA") (Count Five) and intentional infliction of emotional distress (Count Six).  Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441.  This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a).

## II. DISCUSSION

### A. Legal Standard

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  Following Iqbal and Twombly, the Third Circuit has held that, to

prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation."  Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

### B.  Waiver of Claims Based on Election of CEPA Remedy

CEPA, N.J.S.A. 34:19-1, et seq., prohibits employers from taking retaliatory actions against employees "who 'blow the whistle' on organizations engaged in illegal or harmful activity."  Young v. Schering Corp., 141 N.J. 16, 23 (1995).  Defendants' principal argument on this motion to dismiss relies on CEPA's waiver provision.  It provides that

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8.  The New Jersey Supreme Court has held that the CEPA waiver provision applies to claims for retaliatory conduct which is actionable under CEPA but not to those causes of action that are "substantially independent" of the CEPA claim.  Young, 141 N.J. at 29.

4

In this case, Plaintiff has alleged that Defendants violated CEPA by terminating his employment after he "approach[ed] the Home Depot Human Resource Department to report and complain about the discriminatory, hostile and retaliatory actions being taken by Darby and Matthews as a result of their desire to replace Broad with a younger worker earning less money." (Compl. ¶ 44.)  Defendants argue that Plaintiff's decision to assert a CEPA claim for his allegedly retaliatory termination of employment from Home Depot waives his right to seek relief for the same alleged wrongdoing pursuant to another cause of action.  In particular, they argue that Plaintiff cannot proceed with his NJLAD retaliation claim because it is similarly premised on allegations that Broad was wrongfully terminated in retaliation for his knowledge and complaints that Darby and Matthews were attempting to have Broad replaced by "younger, lesser compensated employees" and "violating Home Depot policies and procedures." (Compl. ¶ 39.)

Plaintiff raises two grounds upon which he contends that the CEPA waiver does not bar him from proceeding with the NJLAD retaliation claim: (1) waiver of the NJLAD claim at the pleading stage of litigation would be premature and (2) the NJLAD claim is substantially independent of the CEPA claim, as the conduct giving rise to the NJLAD retaliation claim consists of the poor performance reviews and disciplinary "counseling" Broad received as a result of his complaints to Darby and Matthews about his demotion and as a result of his attempt to seek advice from other Home Depot employees about the supervisors' treatment of Broad.

On the one hand, there does appear to be at least a partial overlap in the alleged wrongdoing on which the NJLAD and CEPA claims are based.  On the other, as Plaintiff points out, the Complaint also alleges that Plaintiff was subjected to a demotion, negative performance reviews and other adverse treatment.  According to the pleading, the possibility that Plaintiff's

NJLAD retaliation claim may be barred by the CEPA claim is not foreclosed, but neither it is it confirmed. The Court agrees with Plaintiff that, on this Rule 12(b)(6) motion, it would be premature to draw a conclusion about whether alleged wrongdoing on which NJLAD claim is based falls within the purview of CEPA.

As this Court discussed at length in its opinion in Rubin v. Sultan Healthcare, Inc., the decisions issued by New Jersey courts on this issue support the view that the CEPA waiver does not attach until after the completion of discovery. See Rubin v. Sultan Healthcare, Inc., No. 08-6175 (SRC), 2009 WL 1372272, at *4 (D.N.J. May 15, 2009). In Young, the New Jersey Supreme Court held that the CEPA waiver provision must be construed narrowly in light of the statute's purpose of enlarging protections against a retaliatory discharge and in light of the fact that the statute constricts common law remedies otherwise available to a plaintiff. Young, 141 N.J. at 27-28   While the Young Court gave no definitive interpretation of the point at which the waiver takes effect, it observed that the provision's use of the phrase "institution of the action" possibly indicated "something other than the filing of a complaint." Id. at 32. It is true, as Defendants argue, that the Supreme Court's statement was dicta. However, Young is not the only available indication of how the state's highest court would rule on this issue, and the task of this Court is to look to the relevant appellate court decisions to predict how the New Jersey Supreme Court would decide the question of when CEPA requires a plaintiff to elect his remedy for retaliatory conduct by an employer. See Werwinski v. Ford Motor Co., 286 F.3d 661, 670-71 (3d Cir. 2002) (holding that, in the absence of a controlling decision from the state's highest court on an issue of state law, a federal court sitting in diversity must predict how the court would rule by considering the relevant decisions of the state's appellate courts); see also

Robertson v. Allied Signal, Inc., 914 F.2d 360, (3d Cir. 1990) (holding that in making such predictions, the role of federal court "is not to form or create state law but to decide the case as [the court] believe[s] it would have been decided by the state's highest court had the case arisen in the state court system.").

In reliance on the Young Court's guidance, the New Jersey Appellate Division expressly held that the CEPA waiver provision must be interpreted to deem other causes of action waived only after a plaintiff has a meaningful opportunity to gather facts and choose his remedy based on information. Maw v. Advanced Clinical Comms., 359 N.J. Super. 420, 440 (App. Div. 2003), rev'd on other grounds by 179 N.J. 439 (2004). In Maw, the plaintiff, who had been fired from her job as a graphic designer for refusing to sign a contract with a non-compete clause, initiated a lawsuit against her former employer seeking relief under both CEPA and the common law for wrongful discharge in violation of public policy. Id. at 426-27. Pursuant to CEPA's exclusivity provision, the trial court had dismissed the wrongful discharge claim as a duplicative claim of retaliation. Id. at 440. On appeal of that decision, the Maw court framed the issue as one of timing: "Here, the issue is not whether plaintiff ultimately may bring both a common-law claim and a CEPA claim—plaintiff acknowledges that she must elect one or the other—but rather at what point must plaintiff make the election." Id. To answer this question, the court considered the Supreme Court's discussion in Young, and moreover, noted that the CEPA waiver provision was typically not enforced until "later stages of the litigation," that is, later than the pleadings stage. Id. at 441. The Appellate Division held that "before electing remedies, a plaintiff should have an opportunity to complete discovery. Only after gaining access to all of the facts will a plaintiff be in a position to make a knowing and meaningful election." Id. Accordingly, the Maw

court directed that the plaintiff's common law wrongful discharge claim be re-instated, finding it was prematurely dismissed pursuant to CEPA. Id.  Later, when the Supreme Court reversed the decision, it did so because the wrongful discharge claim had been inadequately pled and not because the appellate division's analysis of the CEPA waiver provision was incorrect. Maw v. Advanced Clinical Comms., 179 N.J. 439, 445-46 (2004). The dissenting opinion expressed that both the CEPA claim and the common law retaliatory discharge claim should proceed, implying the view that the CEPA waiver provision would not bar related retaliation claims at the pleading stage. Id. at 459.

This issue is precisely the one presented by the instant motion. Plaintiff may ultimately be forced to elect his remedy, if indeed discovery confirms, as Defendants have argued, that Plaintiff's NJLAD retaliation claim and his common law claims are duplicative of the CEPA claim. Based on Young and Maw, however, this Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision does not require a plaintiff to make this choice at the pleading stage. Rather, the applicable caselaw indicates that enforcement of the CEPA waiver would be deferred until the plaintiff has had an opportunity to conduct discovery.

Defendants cite to the Third Circuit's opinion in Baldassare v. New Jersey as supporting a contrary view, arguing that the court applied Young and found the plaintiff's common law claims subsumed by CEPA. See Baldassare v. New Jersey, 250 F.3d 188, 202 (3d Cir. 2001). The argument is unavailing. Baldassare does not hold, or even suggest that the CEPA waiver applies at the pleading stage. In fact, the Third Circuit affirmed an order granting the defendants

8

*summary judgment* on the plaintiff's state law claims that were based on the same facts as his CEPA retaliation claim.  Id. at 202-03.[1]

Thus, for the foregoing reasons, insofar as the instant motion seeks to dismiss Plaintiff's NJLAD retaliation claim and his common law claims as duplicative of the CEPA claim, the motion will be denied.

### C.  Claims Based on Age Discrimination

Defendants alternatively argue that because Broad's common law claims are premised on the same factual allegations underlying his NJLAD age discrimination claim, they must be dismissed as preempted by the NJLAD.  Broad's opposition to this argument consists solely of the assertion that the breach of contract and breach of covenant of good faith and fair dealing claim are not based solely on age discrimination but also on the alleged failure of Home Depot to follow its standard operating procedures in the way it demoted and then terminated Plaintiff and on its failure to honor the "de facto employment agreement, whereby Broad had a reasonable expectation of continued employment provided his work performance remained consistent with Home Depot standards."[2]  (Compl. ¶ 19.)  As to the intentional infliction of emotional distress claim pled in Count Six of the Complaint, Plaintiff makes no argument in at all, and, without conceding that the claim is duplicative of his statutory claims, expressly states that "Plaintiff does not oppose the dismissal of Count Six of the Complaint."  (Opp'n Br. at 1, n.1.)

---

[1] Though not cited by Defendants, the Third Circuit's decision in Robles v. United States Environmental Universal Services, Inc. also involved plaintiff employees who had tried to pursue both CEPA and common law wrongful termination claims.  See Robles v. United States Envtl. Universal Svcs., Inc., 469 F. App'x 104, 106 (3d Cir. 2012). Citing the CEPA waiver provision and Young, the Third Circuit held that "[Plaintiffs] Saltos and Robles have waived their wrongful termination claims by filing CEPA claims."  Id.  Though the Court of Appeals used the word "filing," this Court notes that this statement was made in the context of reviewing an order granting summary judgment.  Moreover, Robles is a non-published opinion and therefore should not be regarded as binding precedent. See In re Grand Jury Investigation, 445 F.3d 266, 276 (3d Cir. 2006).

[2] In their reply brief, Defendants maintain that Plaintiff's failure to raise any argument in opposition to the NJLAD preemption of his breach of contract and breach of the covenant of good faith claims militates in favor of dismissal. Though hardly the most well-developed argument, the opposition brief does assert that proving the claims "requires no showing of discriminatory or retaliatory conduct."  (Opp'n Br. at 18.)

The NJLAD, codified at N.J.S.A. 10:5-1, et seq., was enacted to reflect "the clear public policy of [New Jersey] . . . to abolish discrimination in the work place." Shaner v. Horizon Bancorp., 116 N.J. 433, 436 (1989). "Because of the broad availability of remedies under the LAD, both state and federal courts in New Jersey have frequently held that the LAD bars common law claims based on the same operative facts as underlie the LAD claim." Everson v. JPMorgan Chase Bank, No. 12-7288 (FLW), 2013 U.S. Dist. LEXIS 65309, at *7 (D.N.J. May 8, 2013) (citing various cases). Despite Plaintiff's assertion to the contrary, the Complaint makes it clear that Broad's contract and covenant of good faith claims are based on alleged age discrimination. These counts incorporate the earlier recited factual allegations by reference. Those allegations include numerous assertions that Broad's demotion and termination were not the result of poor performance, unprofessional behavior and/or some other legitimate reason, but rather an effort to replace him with "younger and lesser paid" individuals. Building on this factual basis, the Complaint avers that the "de facto" employment agreement between Broad and Home Depot was breached because, although Broad "consistently met and/or exceeded Home Depot's performance standards," thus satisfying his contractual obligation, Home Depot terminated his employment "without proper cause" and for "pre-textual" reasons. (Compl. ¶ 20, 22.) Though the counts in which the breach of contract and breach of the covenant of good faith and fair dealing claims are set forth do not expressly use the term "age discrimination," reading the Complaint as a whole reveals that, at bottom, that is precisely the alleged wrong the claims seek to remedy. Because a statutory cause of action under the NJLAD is available and indeed asserted by Plaintiff for the age discrimination to which Defendants allegedly subjected him, the other claims based on age discrimination are preempted. Santiago v. City of Vineland, 107 F.

Supp. 2d 512, 567 (D.N.J. 2000) (finding the plaintiff's contract claim preempted by his NJLAD claim and further observing that by alleging that an implied contract existed by virtue of the defendant's non-discrimination policy, the plaintiff appeared to be avoiding a common law wrongful discharge claim through artful pleading); cf. Lawrence v. Nat'l Westminster Bank of N.J., 98 F.3d 61, 73 (3d Cir. 1996) (affirming the district court's dismissal of a claim for wrongful discharge contrary to a clear mandate of public policy, reasoning that a plaintiff cannot advance a separate common law wrongful discharge claim when the sources of public policy relied on by the plaintiff are coterminous with his statutory claims).

Accordingly, the claims at Count One of the Complaint, for breach of contract, and Count Two, for breach of the covenant of good faith and fair dealing, will be dismissed. The intentional infliction of emotional distress claim, set forth in Count Six, will also be dismissed, as Plaintiff has stated he does not oppose the motion in this regard.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Counts One, Two and Six of the Complaint pursuant to Rule 12(b)(6). The motion will be denied insofar as it seeks dismissal of Count Four of the Complaint. An appropriate Order will be filed.

```
     s/ Stanley R. Chesler
    STANLEY R. CHESLER
    United States District Judge
```

Dated: April 22, 2014